THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ASSET GROUP, INC., )<br>)<br>    Plaintiff/Counterclaim Defendant, )<br>)<br>v. )<br>)<br>CORRUGATED ERECTORS, INC., )<br>)<br>    Defendant/Counterclaimant, )<br>)<br>and )<br>)<br>TRAVELERS CASUALTY AND )<br>    SURETY COMPANY, )<br>)<br>    Defendant. )<br>)<br>CORRUGATED ERECTORS, INC., )<br>)<br>    Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>GRAVITY-RATTERMAN, LLC, )<br>NATIONAL TRUST INSURANCE )<br>    COMPANY, )<br>PHILADELPHIA INDEMNITY )<br>    INSURANCE COMPANY, and )<br>GREAT AMERICAN INSURANCE )<br>    COMPANY, )<br>)<br>    Third-Party Defendants. ) | Case No. CIV-14-435-SLP |

**O R D E R**

Before the Court are two cross-motions for summary judgment. First, Third-Party Defendant Gravity-Ratterman, LLC filed Motion for Summary Judgment [Doc. No. 560], to which Defendant/Third-Party Plaintiff Corrugated Erectors, Inc. filed a Response [Doc.

No. 569]. Gravity did not file a reply. Second, Corrugated filed its Amended Motion for Partial Summary Judgment [Doc. No. 566], to which Gravity responded, *see* [Doc. No. 571], and Corrugated replied, *see* [Doc. No. 574].[1]

## I.     Background

The latest round of summary judgment briefing follows significant developments in the makeup of this action. After the Court denied two separate motions for the entry of a consent judgment, Plaintiff Asset Group, Inc. and Corrugated entered into a settlement agreement ("the Settlement") that resolved those parties' claims against one another. The Settlement also resulted in the dismissal of Corrugated's claims against Third-Party Defendants Philadelphia Indemnity Insurance Company and Great American Insurance Company, *see* [Docs. No. 523, 545], and Asset's claims against Defendant Travelers Casualty and Surety Company, *see* [Doc. No. 543].

As a result, the only parties remaining in this action are Corrugated, Gravity, and National Trust. The only pending claims are (1) Corrugated's claims against Gravity for negligence and breach of contract and/or breach of warranty, and (2) Corrugated's claim against National Trust for breach of contract. *See* [Doc. No. 84] at 8–12. The Court granted

---

[1] Third-Party Defendant National Trust Insurance Company also filed a Motion for Summary Judgment [Doc. No. 563]. The Court will resolve that motion by separate order.

leave to allow the parties to file additional summary judgment motions addressing these significant case developments.

## II.     Governing Standard

A party is entitled to summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is only material if it "might affect the outcome of the suit under the governing law." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment "shoulder[s] the initial burden of showing that there is an absence of evidence to support the nonmoving party's case." *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022) (cleaned up). If the movant meets this burden, the nonmovant must then "identify specific facts that show the existence of a genuine issue of material fact." *Id.* (quoting *Clinger v. New Mexico Highlands Univ., Bd. of Regents*, 215 F.3d 1162, 1165 (10th Cir. 2000).

When a district court is "presented with cross-motions for summary judgment," it "'must view each motion separately,' in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Ct. of*

*New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016) (quoting *Manganella v. Evanston Ins. Co.*, 702 F.3d 68, 72 (1st Cir. 2012)).

### III. Undisputed Material Facts[2]

As detailed in the Court's previous orders, this lawsuit stems from the construction of the School Age Center in Fort Polk, Louisiana. The United States Army Corps of Engineers entered into a contract with Asset to construct the Center. Asset then entered into subcontracts with River City Drywall (for, *inter alia*, the installation of metal studs on exterior walls and "permanent and temporary bracing of walls as necessary," [Doc. No. 234-3] at 17), and Corrugated (for, *inter alia*, completion of the standing seam metal roof system and installation of light gauge trusses), *see* [Doc. No. 234-4] at 17.

Corrugated, in turn, entered into a sub-subcontract with Gravity, which was responsible for completing work related to the light gauge trusses and decking. *See* [Doc. No. 84-2] at 1. The Corrugated-Gravity sub-subcontract contains the following indemnification provision:

> To the fullest extent permitted by the law, [Gravity] shall indemnify and hold harmless [Corrugated and others] from all damages, losses, or expenses, including attorneys fees, from any claims or damages for bodily injury, sickness, disease, or death, or from claims for damage to tangible property, other than the Work itself. This indemnification shall extend to claims resulting from the performance of this Subcontract and shall apply only to the extent that the claim or loss is caused in whole or in part by any negligent act or omission of [Gravity] or any of its agents, employees, or Subcontractors. This indemnity shall be effective regardless of whether the claim or loss is caused in some part by a party to be indemnified. . . .

---

[2] The Court includes facts that are material, supported by the summary judgment record, and not genuinely disputed. *See* Fed. R. Civ. P. 56(c).

*Id.* at 3.

The trusses were installed at the center between April and August 2013. In October 2013, deficiencies in the trusses were discovered. The parties disagree about the cause of these deficiencies. In November 2013, Asset sent a cure notice to Corrugated stating:

> ASSET Group has discovered that certain of the deficiencies noted on the walls were caused by Gravity Ratterman. Specifically, during a review of photographs taken during construction it is evident that the lateral bracing on the high walls was installed prior to the truss installation. ASSET has attached several representative photographs that depict this condition and sequence of the installation. The photographs show that both the cold rolled steel and the strap bracing was installed on the high walls. Further investigation shows that some of the straps are still partially attached. One photograph shows studs where the straps appeared to have been installed and vacant holes from the screws that were used to attach the straps or clips (depending on the type of bracing and/or blocking required). In one photograph you can see where the cold roll steel was cut and Gravity Ratterman is installing the truss.
>
> ASSET Group interviewed the prior QC who stated that River City and Gravity Ratterman openly argued over the point that Gravity Ratterman had removed certain bracing. ASSET is told that Gravity Ratterman acceded to the QC officer's demands to not cut any additional bracing and agreed to repair/restore what was already cut and removed. According to further project records and the as-installed condition today, Gravity Ratterman never repaired/restored he cut bracing. In fact, the record shows that Gravity Ratterman continued removing bracing after River City left the project. The bracing that was removed was not at eye level and, thus, was apparently missed by follow-on QC inspectors.

[Doc. No. 123-5] at 2 (footnote omitted). The cure notice also included a photo, which Asset claimed "shows the cold roll steel and steel strap lateral bracing was in place in the clerestory but as shown in this picture it has been cut to install the trusses." *Id.* at 6.

In April 2014, Asset filed suit, alleging Corrugated breached its contract with Asset and acted negligently by, *inter alia*, "[a]llowing or failing to identify and prevent the

removal of lateral bracing from Clerestory walls." [Doc. No. 1] ¶ 16(j). On May 20, 2014, Corrugated sought defense and indemnity from Gravity and National Trust. *See* [Doc. No. 123-12]; *see also* [Doc. No. 123-14] ("Corrugated has tendered its defense and indemnification of the lawsuit to our [insured] Gravity-Ratterman LLC [] and National Trust."). Both Gravity and National Trust declined to tender a defense.

Asset filed its Fourth Amended Complaint [Doc. No. 41] on October 7, 2014, asserting claims against Corrugated for breach of contract, breach of implied warranties, and negligence. The Fourth Amended Complaint alleged: "As a direct and legal result of Corrugated's negligence (whether alone, together with or by or through its own subcontractors and engineers, including but not limited to Gravity), ASSET has been damaged . . . in an amount to be proven at trial estimated in excess of $982,626.94." *Id.* ¶ 44. Corrugated filed a counterclaim against Asset for breach of contract, *see* [Doc. No. 84] at 6–7, and asserted third-party claims against Gravity (for negligence and breach of contract and/or breach of warranties) and National Trust (for breach of contract),[3] *id.* at 10–11.

On or around December 29, 2023, Asset and Corrugated entered into a settlement agreement to resolve their claims against each other. *See* [Doc. No. 566-2]. As part of this

---

[3] Corrugated initially named FCCI as a third-party defendant. In August 2017, the Court granted leave to substitute National Trust for FCCI. *See* [Docs. No. 154, 155]. The Court refers to "National Trust" when referencing actions taken prior to the substitution.

6

settlement, Corrugated agreed to pay $364,455 to resolve Asset's negligence claim against it.[4]

## IV. Analysis

Both Corrugated and Gravity's motions implicate the indemnification agreement contained in the Corrugated-Gravity sub-subcontract. Corrugated contends it "is entitled to summary judgment on its contractual indemnification claim" against Gravity "because there is no genuine issue of material fact with regard to the application of the Indemnification Agreement to Asset's negligence claim against Corrugated in this matter" now that Corrugated and Asset have reached a settlement. [Doc. No. 566] at 11–12. On the other hand, Gravity claims (1) the Settlement sets an upper limit on the amounts that Corrugated can recover from Gravity, (2) Corrugated cannot execute a judgment against Gravity, and (3) Corrugated is derivatively responsible for Asset's mismanagement.

### A. The Legal Effect of the Settlement

Corrugated seeks partial summary judgment against Gravity, arguing the Settlement triggers the indemnification provision because Gravity failed to tender a defense. Corrugated relies primarily on Okla. Stat. tit. 15, § 427 and *Chicago, Rock Island & Pacific Railway Co. v. Dobry Flour Mills*, 211 F.2d 785 (10th Cir. 1954).[5]

---

[4] Corrugated also agreed to pay Asset $125,000 to resolve Asset's breach of contract claim, but it is not seeking indemnification from Gravity as to that part of the Settlement. *See* [Doc. No. 574] at 2–3.

[5] Both parties rely on Oklahoma law, and neither argues that any other state's law applies to the interpretation of the contract.

"The general rules of contract interpretation apply to the interpretation of an indemnity contract." *Otis Elevator Co. v. Midland Red Oak Realty, Inc.*, 483 F.3d 1095, 1101 (10th Cir. 2007). The Court must interpret contracts "to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." Okla. Stat. tit. 15, § 152. Section 427 provides additional rules for courts to apply in interpreting indemnity contracts "unless a contrary intention appears." Okla. Stat. tit. 15, § 427. Those rules, as set forth in the statute, are:

> 1. Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable.
>
> 2. Upon an indemnity against claims or demands, or damages or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof.
>
> 3. An indemnity against claims or demands, or liability, expressly or in other equivalent terms, embraces the costs of defense against such claims, demands or liability incurred in good faith, and in the exercise of reasonable discretion.
>
> 4. The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity; but the person indemnified has the right to conduct such defense, if he chooses to do so.
>
> 5. If, after request, the person indemnifying neglects to defend the person indemnified, a recovery against the latter, suffered by him in good faith, is conclusive in his favor against the former.
>
> 6. If the person indemnifying, whether he is a principal or a surety in the agreement, has not reasonable notice of the action of proceedings against the person indemnified, or is not allowed to control its defense, judgment against the latter is only presumptive evidence against the former.
>
> 7. A stipulation that a judgment against the person indemnified shall be conclusive upon the person indemnifying, is applicable if he had a good

>   defense upon the merits, which, by want of ordinary care, he failed to establish in the action.

Okla. Stat. tit. 15, § 427.

In *Dobry*, a "railroad company constructed a spur track from its main line to serve a flour mill." 211 F.2d at 786. The contract between the railroad and the flour mill included an indemnification provision in which the flour mill

> "agree[d] to indemnify and hold harmless the [railroad] for loss, damage or injury from any act or omission of the [flour mill], its employees or agents, to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation, while on or about said track, and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."

*Id.*

A railroad employee sued his employer for negligence after he was injured working on the track, claiming it "was covered with an accumulation of flour dust from the Dobry mill." *Id.* The railroad asked the flour mill to defend the negligence claim and advised it would settle the case and seek indemnification if the flour mill declined. The flour mill disclaimed liability and declined to tender a defense. As promised, the railroad settled the negligence action with the employee and sued the flour mill for indemnification under the contract.

The flour mill admitted the indemnification provision existed but continued to deny liability for the accident. The Tenth Circuit, relying on § 427, concluded that because the flour mill had declined to tender a defense to the railroad, it could no longer assert defenses to the employee's negligence claim:

> [I]n Oklahoma and elsewhere in indemnity cases, where the indemnitor denies liability under the indemnity contract and refuses to assume the defense of the claim, then the indemnitee is in full charge of the matter and may make a good faith settlement without assuming the risk of being able to prove absolute legal liability or the actual amount of the damage. A contrary rule would make the right to settle meaningless in cases where the indemnitor has denied liability

*Id.* at 788 (citations omitted). Because the flour mill's liability "[wa]s not to be determined from its primary liability to [the employee] but from its obligations as created by the contract," the jury should have been tasked only with determining "whether the Railroad made a reasonable, prudent and good faith compromise and settlement." *Id.*

Corrugated cites two other cases in which courts citing *Dobry* have reached the same result under similar facts. *See Callaway v. Wiltel Commc'ns, LLC*, No. 06-CV-0579-CVE-PJC, 2007 WL 2902878, at *6 (N.D. Okla. Oct. 2, 2007) ("It is sufficient that Callaway alleged Batten's performance of the work caused his injury. Batten breached the indemnification agreement when it refused to comply with its contractual obligation to defend and indemnify WilTel, and Batten is liable to WilTel under the indemnification agreement."); *Kelly-Springfield Tire Co. v. Mobil Oil Corp.*, 551 P.2d 671, 673–74 (Okla. Civ. App. 1976) ("At no place in the indemnity agreement do we find that Kelly must be proven guilty of negligence, but instead it says that Kelly will save Mobil and DeYong harmless from every claim or injury, including attorneys' fees, which may arise or be asserted, based upon a claim of injury, claimed to have been caused by or attributable to defective workmanship or material."). Notably, the indemnitors in those two cases agreed to hold harmless and indemnify for claims arising from their own negligence.

Gravity's Response [Doc. No. 571], which includes just three pages of analysis, reiterates its argument that disputes of fact about the trusses preclude summary judgment.[6] Gravity does not attempt to distinguish *Dobry* or present any legal argument as to why it is inapplicable to this case following the Settlement. Perplexingly, Gravity does not even mention *Dobry* in its Response, nor did it file a reply in support of its own Motion to address the case's applicability.[7] Instead, Gravity reiterates the argument that its negligence is disputed, precluding summary judgment. But it does not explain why that

---

[6] Gravity's briefing also makes no distinction between the factual basis for Corrugated's breach of contract claim and its negligence claim.

[7] At a previous hearing, the Court suggested the parties' arguments were akin to a silent disco; rather than providing law or facts rebutting the opposing party's position, each party steadfastly stuck to the argument it wanted to make. Gravity has not strayed from this approach in its briefing. Rather than addressing Corrugated's arguments under the *Dobry* line of cases, Gravity continues beating the drum that such a result violates Okla. Stat. tit. 15, § 221(B). To the extent there is some argument as to why *Dobry* is inapplicable here, Gravity has not even attempted to make it. The Court notes that Corrugated's reliance on *Dobry* and its progeny can come as no surprise to Gravity. Corrugated has promulgated this theory since at least September 5, 2023, when it made similar arguments in support of its motion for a consent judgment. *See* [Doc. No. 475] at 9. While the Court ultimately determined that "Asset and Corrugated's attempt to create a legal obligation *through the entry of a consent decree* is improper," it cautioned that "nothing in [its] Order should be construed as an opinion about Gravity's duty to indemnify Corrugated *outside of the context of the proposed consent judgment*." [Doc. No. 536] at 9 & n.5 (emphasis added). This action has a long procedural history, throughout which the parties have presented and briefed myriad issues. It is not the Court's function to sort through the factual record, previous briefing, or prior rulings to construct legal arguments rebutting Corrugated's position. *See State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 885 (10th Cir. 2021) ("[C]ourts do not sit as self-directed boards of legal inquiry and research." (quoting *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 147 n.10 (2011))); *C.P.C. v. Boulder Valley Sch. Dist. Re-2*, No. 122CV00564RMRSBP, 2023 WL 8831330, at *3 (D. Colo. Dec. 21, 2023) ("The Court is not obligated to perform legal research on behalf of [a party] . . . nor will the Court make arguments for [a party] that he himself has not raised."); *Lovato v. Mahler*, No. 121CV01986RMRMDB, 2023 WL 2613821, at *3 (D. Colo. Mar. 23, 2023) ("The Court will not make arguments for the parties, nor should the parties expect that the Court will consider arguments that the parties could have made but did not."). Instead, the Court confines its ruling to the positions advanced by counsel.

dispute is *material* where, as here, the party it agreed to indemnify reached a settlement on the underlying negligence claim after Gravity declined to tender a defense. Upon review—and without the benefit of any argument from counsel on this point—*Dobry* appears to control the result in this case.

In its own Motion, Gravity claims Corrugated is improperly "rely[ing] on its settlement with Asset to establish a right to indemnity from [Gravity]."[8] [Doc. No. 560] at 8. But this framing does not accurately articulate Corrugated's position. Corrugated relies on the indemnification provision contained in the Corrugated-Gravity sub-subcontract as the source of its right to indemnification, not the Settlement. Corrugated claims that the Settlement, coupled with Gravity's declination of a defense under § 427, means that it no longer has to prove Gravity's negligence in order to recover under the contract provision, as set forth in *Dobry* and its progeny.

Gravity's Motion focuses nearly exclusively on § 221(B),[9] claiming that Corrugated cannot seek to recover more than Gravity's negligence under the indemnification provision.

---

[8] Gravity cites one case in support of this argument. There, the Oklahoma Supreme Court stated that "it is the recovery which is conclusive, if the person is in fact indemnified and the recovery does not in itself conclusively establish that the person claiming to be indemnified is in fact indemnified." *U.S. Fid. & Guar. Co. v. Dawson Produce Co.*, 68 P.2d 105, 106 (Okla. 1937). Gravity then claims that Corrugated "must still establish fault on the part of [Gravity], and the extent of any such fault, to obtain any recovery from [Gravity] on a theory of indemnity." [Doc. No. 560] at 8. But as Corrugated points out, *Dawson* addressed the preclusive effect of an earlier *judgment* on an insurer who failed to provide a defense. *See* 68 P.2d at 106. Here, the question is whether Corrugated can seek contractual indemnification from Gravity to reimburse it for the amounts paid to *settle* Asset's negligence claim—an issue more directly addressed by both *Dobry* and § 427.

[9] That subsection reads: "Except as provided in subsection C or D of this section, any provision in a construction agreement that requires an entity or that entity's surety or insurer to indemnify, insure, defend or hold harmless another entity against liability for damage arising out of death or

In Gravity's view, § 221(B) requires a jury to determine whether and to what extent Gravity was negligent before any indemnification obligation is triggered under the contract—although it cites no legal authority supporting that result when an indemnitor settles a claim after the would-be indemnitee refuses to tender a defense.

Further, Gravity's § 221(B) argument ignores the plain language of the indemnification provision, § 427, and *Dobry*.  Gravity does not dispute that it agreed to defend and indemnify and hold Corrugated harmless "from *claims* for damage to tangible property, other than the Work itself," as long as "the claim or loss is caused in whole or in part by any negligent act or omission of [Gravity]."[10]   [Doc. No. 84-2] at 3.  It does not dispute that it declined to tender a defense to Corrugated.  It does not dispute that Asset and Corrugated have settled the claims.  Nor does it dispute that the factual basis for the $364,455 payment is Gravity's cutting of certain bracing, and not the actions of Corrugated or any other contractors.[11]   Finally, Gravity provides scant legal authority to support its interpretation of how §§ 221 and 427 apply after the indemnitee has settled the underlying claim.

---

bodily injury to persons, or damage to property, which arises out of the negligence or fault of the indemnitee, its agents, representatives, subcontractors, or suppliers, is void and unenforceable as against public policy."

[10] While Gravity references the allegations in Asset's pleadings, it does so only to support its arguments under § 221(B).  It does not argue the allegations are insufficient to trigger the indemnification provision outside of that context.

[11] As set forth in ¶ 2.06 of the settlement agreement [Doc. No. 566-2], Asset and Corrugated "incorporate by reference the[ir] Amended Stipulation and Consent to Entry of Judgment [Doc. 506-1] as a material part of this Agreement but only for purposes of supporting the Parties' reasons, rationale and basis for reaching this Settlement."

The Court agrees with Corrugated that the Settlement (coupled with Gravity's declination of Corrugated's tender) shifts the focus of this case from a question of negligence to one of contract, as it did in *Dobry*. *See* 211 F.2d at 788 ("On this subject, the only question which should have been submitted to the jury was whether the Railroad made a reasonable, prudent and good faith compromise and settlement."). The sole issue remaining, therefore, is whether the Settlement was made in good faith. At this juncture, genuine issues of fact preclude summary judgment in Corrugated's favor on the question of good faith. As Gravity points out, the agreement attached to the briefing is heavily redacted, and there is conflicting information about whether and to what extent Gravity participated in the negotiations. *See, e.g.*, [Doc. No. 560-5]. Thus, it is appropriate for a factfinder to resolve the question of whether Corrugated settled Asset's negligence claim in good faith.

### B. Remaining Issues in Gravity's Motion

Gravity argues that the $364,455 Corrugated paid to settle Asset's negligence claim sets an upper limit for Corrugated's recovery against Gravity. While Corrugated does not seem to dispute that the actual damages available under the indemnification can't exceed the settlement amount, it fleetingly argues the contract permits recovery of attorney's fees. *See* [Doc. No. 569] at 9 n.1. Gravity did not file a Reply brief, so it did not address the argument. Without the benefit of briefing from counsel on this issue, Gravity has not shown as a matter of law that Corrugated's absolute recovery (i.e., actual damages and

fees) under the indemnification cannot exceed $364,455. Accordingly, this portion of Gravity's Motion is DENIED.

Gravity also seeks summary judgment on the basis that Corrugated "[can]not execute any judgment against [Gravity]" in light of the October 27, 2014 order filed by the U.S. Bankruptcy Court for the Western District of Kentucky. [Doc. No. 560] at 14 (citing [Doc. No. 560-9]. Gravity also makes an equitable argument that Corrugated should be estopped from enforcing any judgment against Gravity. But these issues are not ripe for determination unless and until Corrugated obtains a judgment against Gravity. Accordingly, Gravity's Motion is DENIED as premature.

Finally, Gravity argues that Corrugated is derivatively liable for Asset's mismanagement of the project. But for the same reasons set forth, the Court finds this issue is no longer material in light of the Settlement.

## V.  Conclusion

IT IS THEREFORE ORDERED that Gravity-Ratterman, LLC's Motion for Summary Judgment [Doc. No. 560] is DENIED.

IT IS FURTHER ORDERED that Corrugated Erectors, Inc.'s Amended Motion for Partial Summary Judgment [Doc. No. 566] is GRANTED, as set forth herein.

IT IS SO ORDERED this 24th day of January, 2025.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE